## The Philadelphia Inquirer Co. v. Marvin

*George Garrison Shafer*, for plaintiff.

*Ira A. La Bar*, for defendant.

SHULL, P. J., February 7, 1938.—On April 26, 1937, at the instance of plaintiff, summons issued directed to defendant. On the same day, it is disclosed by the transcript of the justice: "Defendant appears at my office and accepts service of summons, affidavit and statement of claim." The record further discloses that on May 4, 1937, defendant filed an affidavit of defense, and that hearing was set for June 18, 1937, at 2 p.m. The justice's record further discloses:

"June 18, 1937, at 2 p.m., Geo. G. Shafer, Esq., appears for plaintiffs. Defendant also appears. Mr. Shafer offers in evidence proof of an advertisement to be inserted in classified advertising section of the Philadelphia Inquirer on July 7, 1937, and July 14, 1937, and defendant's order by letter for said insertions. Also a statement from plaintiffs to defendant, dated July 8, 1937, inclosing proof, no. of lines (32) and the rate per line which was shown as 50 cents per line making a total sum of $32 for the two insertions, the said $32 being the amount plaintiffs claim is due them from defendant. Mr. Shafer also presents a schedule of advertising rates showing that 50 cents a line is the regular rate charged by papers of the size and circulation of the Philadelphia Inquirer for classified advertising service. Defendant claims the advertisement in question is a display adver-

tisement and not a classified advertisement as ordered by him; that the charge for said advertising is excessive and unjust and more than twice as much as is charged by other papers for similar service.

"After hearing the proofs and allegations of both parties judgment is reserved for 10 days and parties notified of time of judgment.

"And now, June 28, 1937, judgment is entered publicly at 2 p.m. in favor of plaintiffs and against defendant for Thirty Two and 00/100 Dollars ($32) and costs of suit."

On August 11, 1937, certiorari issued.

The exceptions taken to the record of the justice of the peace are as follows:

"1. The record does not show that any witnesses were sworn on behalf of plaintiff or defendant.

"2. The record does not show that any legal proof was offered in evidence.

"3. The record shows that judgment was entered upon bill and allegations of plaintiff, and not upon legal proof.

"4. The record does not show that judgment was entered upon admissions of defendant."

Plaintiff raises the question that the certiorari, having issued more than 20 days after the date of judgment, is too late, and therefore must be dismissed by the court. The Act of March 20, 1810, P. L. 208, sec. 21, provides:

"*Provided*, That no judgment shall be set aside in pursuance of a writ of certiorari, unless the same is issued within twenty days after judgment was rendered, and served within five days thereafter; and no execution shall be set aside in pursuance of the writ aforesaid, unless the said writ is issued and served within twenty days after the execution issued."

The first question confronting us in the present case arises from the law requiring the certiorari to be sued out within 20 days from the rendition of the judgment. In this case the writ was not sued out within 20 days of the rendition of the judgment. The interpretation of this

statute has established certain exceptions to this 20-day requirement, it having been repeatedly held by our courts that the limitation of 20 days does not apply where jurisdiction is involved, or where process was not served in accordance with the requirements of the act, and again, where judgment was void ab initio for want of compliance with the provisions of the statute. As was said in the case of Hoffner v. Kottka, 2 Pears. 360: "To apply the statute to a case like the present . . . would be a great hardship and lead to a grievous wrong", and this, together with the sound principle that the right to have stricken from a record a void judgment has and always should be enjoyed by every individual, leads us to the conclusion that the limitation of this statute should not apply in this case for the reason that the justice's record does not show a compliance with the statute. From this record, the judgment was rendered upon the mere production of what was asserted to be "proof of an advertisement" to be inserted in the classified advertising section of the Philadelphia Inquirer of July 7, 1937, and July 14, 1937; defendant's order by letter for said insertion; a statement from plaintiff to defendant dated July 8th setting forth the rate per line; and by presenting a schedule of advertising rates. The record does not disclose that there was any proof of the letter, or the proof of advertisement, or the statement, by any witness, under which these papers could become admissible or that any witness testified to any of plaintiff's allegations.

In the case of Lenore v. Ingram, 1 Phila. 519, the court said:

"The judgment was rendered upon the mere production of what was asserted to be defendant's promissory note; the record shows there was no proof that he was the maker of it, and the law says the magistrate shall give judgment after hearing the parties, *their proofs* and allegations. This was dispensed with, and the judgment is therefore reversed."

484

The proof of advertisement, the alleged letter of defendant, and a printed schedule of prices cannot prove themselves. It cannot be presumed that they were either authentic or correct. They must be affirmatively proved and so appear from the record. As this record stands, it does not disclose that any testimony was taken, it does not disclose that any legal evidence was offered or received, and there is nothing under the statute authorizing a justice of the peace to ascertain the amount of a claim without testimony unless it be on the admission of a defendant. The Act of 1810, supra, provides that the justice of the peace must first hear evidence in support of plaintiff's claim. The law says that he is to give judgment after hearing the parties, their proofs and allegations. His entire power to render a judgment depends upon his compliance with the statute, and where there is a failure to comply with the mandatory direction of the statutes a valid judgment cannot be rendered.

The first, second, and third exceptions are sustained.

And now, February 7, 1938, the judgment of the justice of the peace is reversed.